Nos. 2023-1354, 2023-1384, 2023-1407

# United States Court of Appeals
# for the Federal Circuit

HONEYWELL INTERNATIONAL INC., TELIT
CINTERION DEUTSCHLAND GMBH, fdba Thales DIS
AIS Deutschland GmbH, SIERRA WIRELESS, ULC, fka
Sierra Wireless, Inc.,

*Appellants,*

v.

3G LICENSING, S.A.,

*Appellee.*

Appeals from the United States Patent and Trademark Office, Patent Trial and
Appeal Board in IPR2021-00908

## APPELLEE 3G LICENSING, S.A.'S
## COMBINED PETITION FOR PANEL REHEARING
## AND REHEARING EN BANC

Timothy Devlin
tdevlin@devlinlawfirm.com
Donald Puckett
dpuckett@devlinlawfirm.com
Andrew Peter DeMarco
ademarco@devlinlawfirm.com
Robert J. Gajarsa
rgajarsa@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010

*Counsel for Appellee
3G Licensing, S.A.*

January 31, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2023-01354, 2023-01361, 2023-01384, 2023-01407 |
| **Short Case Caption** | Honeywell International, Inc. v. 3G Licensing S.A. |
| **Filing Party/Entity** | 3G Licensing, S.A. |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/31/2025

Signature: /s/ Timothy Devlin

Name: Timothy Devlin

i

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| 3G Licensing, S.A. | | Sisvel International S.A. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

ii

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable          ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)     ☐ No     ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF AUTHORITIES ......................................................................v

STATEMENT OF COUNSEL ...................................................................1

POINTS OF LAW OR FACT OVERLOOKED OR MISAPPREHENDED
    BY THE COURT.............................................................................2

ARGUMENT ...........................................................................................3

CONCLUSION ...................................................................................144

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*AFGE, Local 2263 v. FLRA,*
   454 F.3d 1101 (10th Cir. 2006)....................................................5

*BDPCS, Inc. v. FCC,*
   351 F.3d 1177 (D.C. Cir. 2003) ..................................................4

*Bradley v. Vill. of Univ. Park,*
   59 F.4th 887 (7th Cir. 2023) .................................................7, 11

*Braintree Elec. Light Dep't v. FERC,*
   667 F.3d 1284 (D.C. Cir. 2012) ..................................................5

*Crocker v. Piedmont Aviation, Inc.,*
   49 F.3d 735 (D.C. Cir. 1995) .....................................................7

*Doe v. McAleenan,*
   929 F.3d 478 (7th Cir. 2019) .....................................................5

*Eichorn v. AT&T Corp.,*
   484 F.3d 644 (3d. Cir. 2007).....................................................7

*Green Dev., LLC v. FERC,*
   77 F.4th 997 (D.C. Cir. 2023) ...................................................5

*In re Kaslow,*
   707 F.2d 1366 (Fed. Cir. 1983)................................................10

*Indep. Park Apartments v. United States,*
   449 F.3d 1235 (Fed. Cir. 2006)...............................................1, 6

*Laitram Corp. v. NEC Corp.,*
   115 F.3d 947 (Fed. Cir. 1997)................................................6, 9

*Mail Order Ass'n of Am. v. U.S. Postal Serv.,*
   2 F.3d 408 (D.C. Cir. 1993) ......................................................5

*Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.,*
   878 F.3d 1336 (Fed. Cir. 2018)...............................................10

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ........................................................................ 1, 6, 12

*Ms. S. v. Reg'l Sch. Unit 72*,
   916 F.3d 41 (1st Cir. 2019) ...................................................................7

*Nat'l Fuel Gas Supply Corp. v. FERC*,
   468 F.3d 831 (D.C. Cir. 2006) ...............................................................5

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
   545 F.3d 1359 (Fed. Cir. 2008) ............................................................10

*Schering Co. v. Ill. Antibiotics Co.*,
   89 F.3d 357 (7th Cir. 1996) ...................................................................7

*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943) ................................................................... *passim*

*SEC v. Chenery Corp.*,
   332 U.S. 194 (1947) ................................................................. *passim*

## Rules

Fed. R. App. Proc. 28 ...............................................................................10

Fed. R. App. Proc. 47 ...............................................................................10

Fed. Cir. R. 32 ............................................................................... 5, 8, 11

## STATEMENT OF COUNSEL

Based on my professional judgment, I believe the panel decision is contrary

to the following decision(s) of the Supreme Court of the United States or the

precedent(s) of this Court:  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*

*Co.*, 463 U.S. 29 (1983); *SEC v. Chenery Corp.*, 332 U.S. 194 (1947); *SEC v.*

*Chenery Corp.*, 318 U.S. 80 (1943); *Indep. Park Apartments v. United States*, 449

F.3d 1235 (Fed. Cir. 2006).

Based on my professional judgment, I believe this appeal requires an answer

to one or more precedent-setting questions of exceptional importance:

> Does an appellee's listing of less than all claims challenged in an IPR
> on the inside cover of its response brief affirmatively waive alternative
> grounds for affirmance found by the PTAB for other, non-listed claims
> when: (i) the appellant did not include any of the non-listed claims on
> the inside cover of its opening brief; (ii) the appellant did not challenge
> any of the alternative grounds for affirmance for the non-listed claims
> in its opening brief (and thus had already forfeited them); and (iii) Fed.
> Cir. R. 32(a)(3) instructs parties to list "exemplary claims illustrative of
> the issue(s)," not of all claims?

*/s/ Timothy Devlin*
ATTORNEY OF RECORD
FOR APPELLEE

## POINTS OF LAW OR FACT OVERLOOKED
## OR MISAPPREHENDED BY THE COURT

The Court's opinion: (i) overlooked that Appellant Honeywell forfeited any challenge to the Board's alternative bases for upholding independent claim 6 and its dependents; (ii) misapplied Federal Circuit Rule 32(a)(3) to hold that 3G's listing of claims on the inside cover of its response brief pursuant to that rule overrode the Board's alternative grounds for affirmance by operating as an admission that the listed claims were exemplary of all challenged claims, including for issues never raised by an appellant; and (iii) overlooked precedent governing appellate review of agency decisions when it reversed the Board's decision by making new factual findings and addressing new issues in the first instance on appeal.

## ARGUMENT

For all of the reasons discussed in the Dissent (Slip Op. Dissent (Stoll, J.) ("Dissent") at 1–5), the Court should rehear this appeal, affirm the Board's decision on claims 6-7 and 9-13, and vacate and remand on the remaining claims (or, at minimum in the alternative, on all claims at issue). 3G will not burden the Court by rehashing all of the Dissent's well-reasoned points. Three in particular warrant exposition though.

(1) *First*, the Dissent is right that Honeywell forfeited any challenge to the Board's alternative bases for upholding independent claim 6 and its dependents. Dissent at 4 ("Honeywell forfeited any argument regarding the Board's fact findings on the scope and content of the Nokia reference."). This alone mandates affirmance of the Board's decision on those claims.

The Majority concludes otherwise by reasoning that "Honeywell's 'argument for . . . claim 6 hinge[d] on the same arguments" regarding the Philips reference for claim 1, so "the unpatentability case came down to a *single* limitation that was the *same* in substance for both claims [1 and 6]," and "the Board's rejection of Honeywell's []Philips argument thus controls the outcome for both claims 1 and 6." Slip. Op. ("Op.") at 8-9 n.4 (emphasis added). But that is not accurate.

The Board did say that Honeywell's primary argument for "claim 6 hinges on the same arguments" advanced regarding Philips for claim 1; but the Board then

clearly and unequivocally held that "[w]e *also* agree with Patent Owner" that the second reference only asserted against claim 6 and its dependents (the Nokia reference) "does *not* disclose repeating one of the information bits four times, as claim 6 requires" *and* that "we agree with Patent Owner . . . that Petitioner has not sufficiently shown that [a POSITA] would have found it obvious to alter Nokia's method . . . to achieve the '718 patent's method [of claim 6]." Appx43 (emphasis added). Simply put, the Board had two alternative independent and dispositive bases for upholding the validity of claim 6 and its dependents.

Critically, Honeywell never challenged either of these two alternative holdings by the Board. The Dissent was thus right that "Honeywell forfeited any argument regarding the Board's fact findings on the scope and content of Nokia" (i.e., forfeited any challenge to these two alternative bases). Dissent at 4. That forfeiture mandates affirmance of the Board's decision upholding claim 6 and its dependents under the APA. *See, e.g.*, *BDPCS, Inc. v. FCC*, 351 F.3d 1177, 1183 (D.C. Cir. 2003) (Roberts, J.) (when reviewing decisions under the APA, an appellate court will affirm on any alternative ground decided by the agency *unless* it is shown that the agency would not have acted on the alternative ground—an argument never made in this case by Honeywell) (citing *SEC v. Chenery Corp.*, 318

U.S. 80, 87 (1943)).[1]  Accordingly, the Court should rehear this case to affirm the Board's decision upholding claim 6 and its dependents under the APA standards applicable here.

(2)  *Second*, the Dissent is right that the Majority "finds no support in law" for its holding that the Board's alternative dipositive findings for upholding independent claim 6 and its dependents were somehow waived by 3G's listing of only claim 1 on the inside cover of 3G's response brief pursuant to Federal Circuit Rule 32(a)(3). Dissent at 5; *see* Op. at 8 n.4.

As the Dissent put it, this holding "cannot stand."  Dissent at 5.  The underlying rationale is straightforward.  Nothing an appellee says or does can change the content of a decision by an independent agency of the United States or the statutory basis under the APA for an appellate court to review that decision.  In simplest terms, an appellate court must review what *the agency* said *in its decision—*

---

[1] *See also Green Dev., LLC v. FERC*, 77 F.4th 997, 1004 (D.C. Cir. 2023) (same); *Doe v. McAleenan*, 929 F.3d 478, 485 (7th Cir. 2019) (same); *Braintree Elec. Light Dep't v. FERC*, 667 F.3d 1284, 1293 & n.8 (D.C. Cir. 2012) (same); *Nat'l Fuel Gas Supply Corp. v. FERC*, 468 F.3d 831, 839 (D.C. Cir. 2006) (Kavanaugh, J.) (similar); *AFGE, Local 2263 v. FLRA*, 454 F.3d 1101, 1105-06 (10th Cir. 2006) (same); *Mail Order Ass'n of Am. v. U.S. Postal Serv.*, 2 F.3d 408, 434 (D.C. Cir. 1993) (same). This same precedent teaches that the Majority's claim that 3G somehow "forfeited" any related "argument" is incorrect—what is on appeal is the Board's decision, not Appellee's "argument[s]," so there is nothing to forfeit in that respect, and the Court must affirm that decision of the Board under any unchallenged alternative dispositive basis found by the Board (bases that also cannot be waived by an appellee, *see* discussion *infra*).

not what *a party* says *in its brief*. *See, e.g.*, *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order *must be judged* are those *upon which the record discloses that its action was based*.") (emphasis added); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action *solely by the grounds invoked by the agency*.") (emphasis added); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (same).

Nor can an appell*ee* alter the scope of an appeal of such a decision by somehow waiving alternative grounds for affirmance found by an agency, especially alternative grounds never challenged on appeal by an appellant in the first instance. That is, whatever 3G did or said in its *response* brief could not alter the indisputable fact that Honeywell did not appeal in its *opening* brief either of the Board's alternative grounds for upholding claim 6 and its dependents (which, as discussed, mandates affirmance of the Board's decision upholding those claims). *See, e.g.*, *Indep. Park Apartments v. United States*, 449 F.3d 1235, 1240 (Fed. Cir. 2006), *clarified on other grounds on reh'g*, 465 F.3d 1308 (Fed. Cir. 2006) (holding that the appellee "was not required to raise all possible alternative grounds for affirmance in order to avoid waiving any of those grounds") (citing *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 954 (Fed. Cir. 1997); *Schering Co. v. Ill. Antibiotics Co.*, 89

F.3d 357, 358 (7th Cir. 1996); *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 740-41 (D.C. Cir. 1995)); *Bradley v. Vill. of Univ. Park*, 59 F.4th 887, 897-98 (7th Cir. 2023) ("An important difference between waiver for appellants and appellees is that appellees do not waive issues or arguments when they merely fail to assert possible alternative grounds for affirmance."); *Ms. S. v. Reg'l Sch. Unit 72*, 916 F.3d 41, 48-49 (1st Cir. 2019) ("These cases reflect the general rule that the failure of an appellee to have raised all possible alternative grounds for affirming the district court's original decision, unlike an appellant's failure to raise all possible grounds for reversal, should not operate as waiver.") (citing prior circuit precedent along with *Eichorn*, *Indep. Park Apartments*, *Schering*, and *Crocker*); *Eichorn v. AT&T Corp.*, 484 F.3d 644, 657-58 (3d. Cir. 2007) (appellees "were not required to raise all possible alternative grounds for affirmance to avoid waiving those grounds"); *Schering*, 89 F.3d at 358 ("[F]ailure of an appellee to have raised all possible alternative grounds for affirming the district court's original decision, unlike an appellant's failure to raise all possible grounds for reversal, should not operate as a waiver."); *Crocker*, 49 F.3d 735, 741 (D.C. Cir. 1995) (holding that there was no waiver of issue omitted in prior appeal by then-appellee and explaining, *inter alia*, that "forcing appellees to put forth every conceivable alternative ground for affirmance might increase the complexity and scope of appeals more than it would streamline the process of the litigation").

Nor does Federal Circuit Rule 32(a)(3) create any waiver here either. The Majority holds that "3G itself agreed that claim 1 was 'exemplary,' Appellee's Br. Cover Sheet, and neither party has made any argument about challenged claims other than claim 1," so failing to argue "the remaining [challenged claims]" means all "[challenged claims] rise and fall" together. Op. at 8 n.4. As an initial matter, the Majority's recognition that *Honeywell* failed to address any claim other than claim 1 clearly means that *Honeywell first forfeited* any challenge to the Board's alternative grounds for upholding claim 6 and its dependents (exactly as discussed above and by the Dissent). Again, that alone warrants affirmance on those claims.[2]

In any event, Federal Circuit Rule 32(a)(3) does not mandate parties to list claims on the inside cover of principal briefs that are exemplary *of all challenged claims* for *any issue under the sun*. That rule instructs parties to include "language of one or more exemplary patents claims illustrative *of the issue(s)*." Fed. Cir. R. 32(a)(3) (emphasis added). For an appell*ee*, that instruction plainly means listing exemplary claims illustrative of the issues raised by the appell*ant* on appeal.[3] *See,*

---

[2] Nor would a "waiver-of-the-waiver" potentially apply. That theory addresses when a party newly raises on appeal an argument that it waived below and the other side does not claim waiver. That is not the case here, where Honeywell failed to challenge a dispositive alternative basis for affirmance in its opening brief (which is just appellate forfeiture). *See* Dissent at 4.

[3] Nor could a new unwritten requirement to list claims exemplary *of the challenged claims generally for any potential issue* apply to this appeal (under

*e.g.*, *Laitram*, 115 F.3d at 954 (recognizing that appellees do not select the issues on appeal).

Here, as the Majority recognized and the Dissent agreed, Honeywell never "made any argument about challenged claims other than claim 1" (i.e., other than Honeywell's Philips argument in context of claim 1, which had nothing to do with the Nokia reference that was independently relevant to—and dispositive for—claim 6 and its dependents, as the Board found).  Op. at 8 n.4; Dissent at 5; *see also* Oral Arg.  at  6:25-48,  https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-1354_10082024.mp3 ("Court: Weren't there different reasons for motivation to combine in that other, alterative, you know, for claim 6, for example, there was a different reason to make a modification?  Honeywell's Counsel: *There were other reasons put forth in that second ground that's not part of the briefing or the issue here today, your Honor, yes*." (emphasis added)).

Thus, 3G's listing of claim 1 on the inside cover its response brief was simply relisting the only illustrative claim that Honeywell raised in Honeywell's appeal as relevant to the *only issue* Honeywell raised in its appeal—the Board's consideration of the Philips reference.  That is not waiver of the Board's alternative grounds for

---

Fed. Cir. R. 32(a)(3) or otherwise).  *See* Fed. R. App. Proc. 47 (b) ("No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local circuit rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement.").

upholding claim 6 and its dependents—under the APA or otherwise—because of an independent failure of proof regarding a *different* reference (Nokia) that was critical to the petitioner's burden on those claims; one has nothing to do with the other.[4]

Moreover, 3G reproduced claim 6 and its dependents in the body of 3G's response brief in a section listing relevant '718 patent claims in the statement of the case. *See* Response Brief of Appellee, D.I. 50, at 11-16. If listing of relevant patent claims were a requirement to avoid waiver of some sort (though it should not be), doing so in the FRAP statement of the case in a response brief is surely enough. *See* Fed. R. App. Proc. 47 (a) (appellate local rules must be consistent with FRAP); Fed. R. App. Proc. 28(a)(6) & (b)(3) (statement of the case setting out facts *relevant to the issues* is not needed unless the appellee is dissatisfied with, *inter alia*, the appellant's corresponding statement of the case).

The cases the Majority relied on are also inapposite. *See* Op. at 8 n.4 (citing *Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1339 n.1 (Fed. Cir. 2018); *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1365 n.2 (Fed. Cir. 2008); *In re Kaslow*, 707 F.2d 1366, 1376 (Fed. Cir. 1983)). Those cases stand for the unremarkable proposition that an appel*lant* can choose to narrow issues on appeal by raising or treating common dispositive issues to multiple claims as

---

[4] Nor did 3G ever acquiesce or state anywhere that it was waiving the alternative grounds for affirmance found by the Board for claim 6 and its dependents.

representative of its chosen issues.  *See Monsanto Tech. LLC*, 878 F.3d at 1339 n.1; *Net MoneyIN, Inc.*, 545 F.3d at 1365 n.2; *In re Kaslow*, 707 F.2d at 1376.  None of those cases concerns any sort of waiver of appealable issues by an appell*ee*—a critical distinction.  *See, e.g.*, *Bradley*, 59 F.4th 897-98 ("Waiver is not precisely symmetrical for appellees and appellants."; "An important difference between waiver for appell*ants* and appell*ees* is that appell*ees* *do not* waive issues or arguments when they merely fail to assert possible alternative grounds for affirmance." (emphasis added)); *see also* precedent cited *supra* at 6-7.  Nor do any of the Majority's cases take the extraordinary step of using the content of an appell*ee*'s brief to find waiver of independent alternative grounds advanced by an agency in order to reverse an agency decision under the APA despite an appellant's forfeiture of those unchallenged alternative grounds for affirmance.  Again, as the Dissent rightly said, the Majority's waiver holding "finds no support in law."  Dissent at 5.

There is also a critical practical effect the Court should consider.  Were the Majority's waiver reasoning to stand, the bar will very likely avoid the risk of any such potential waiver by routinely listing *all* claims challenged below on the inside cover of principal briefs.  That will nullify any intended benefit of Fed. Cir. R. 32(a)(3) to assist the Court with a quick reference guide to relevant claims on the inside cover of the parties' principal briefs.  Thus, whether as a matter of law or

practical consideration, the Dissent is correct that the Majority's waiver holding based on Fed. Cir. R. 32(a)(3) "cannot stand." Dissent at 5.

(3) *Third*, the Dissent is right that the Majority "depart[ed] from [the] role as an appellate court" by "tak[ing] the extraordinary step of fact finding" and "making arguments for the parties that they did not make" to reverse the Board's decision upholding all the other challenged claims rather than remand for the Board to reconsider its obviousness determination. Dissent at 1-2.

As the Dissent explained, "[t]his case presents a close factual dispute of whether Honeywell proved by preponderant evidence that a skilled artisan would have been motivated to swap the last two bits in Philips' basis sequence without making other changes to the table" and "is unique" in how the Board analyzed extensive "objective evidence" to guard against slipping into the use of hindsight. Dissent at 2. Yet, rather than remand when the panel unanimously agreed that the Board needed to reconsider its obviousness analysis regarding Philips's teachings in this close case, the Majority outright reversed after making several new factual findings in the first instance on appeal (including reweighing the credibility of experts). *See* Dissent at 2-3. This warrants rehearing as a matter of law. *See, e.g.*, *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43; *Chenery*, 332 U.S. at 196; *Chenery*, 318 U.S. at 87; *see also* Dissent at 2-3.

It also warrants rehearing because the Majority's factual findings contradict the record and unchallenged expert testimony. For example, as the Dissent highlights, the Majority discredits key testimony from 3G's expert (Dr. Smith) as conclusory and contradicted by the Philips reference, even though: (i) the Philips reference itself confirms the concern Dr. Smith opined on regarding the negative effects of protecting the most significant bit only (and, thus, confirms the associated lack of motivation Dr. Smith discussed); (ii) the Board found Dr. Smith's testimony credible on this point; and (iii) Honeywell did not challenge this testimony on appeal (in briefing or when questioned at oral argument). *See* Dissent at 2-3.

The Majority's new factual findings are also inconsistent. For instance, the Majority found that certain testimony of Honeywell's expert Dr. Clark was purportedly "unrebutted" regarding how a POSITA would have understood from Philips that "providing extra protection to the MSB would be a desirable goal." Op. at 15. However, the Majority then next recognizes that 3G's expert Dr. Smith had (in fact) "disputed whether it was understood that ['increas[ing] protection to the MSB'] would have been desirable." *Id.* And, as the Dissent recounts (and the Majority appears to concede), that is precisely what Dr. Smith did—he testified (and the Board found credible) "why one of ordinary skill in the art would have considered switching the last two bits in Philips' table to arrive at the claimed invention [to be] undesirable—i.e., because "'[a]dding all protection to just the MSB

13

removes protection for all other bits.'"" Dissent at 2-3 (quoting Op. at 15-16 n.6 (quoting Appx27)) (second alteration in original).

These contradictions and inconsistencies are not unexpected on a complex and "unique" (Dissent at 2) record like the one here, but they confirm the need for remand so that the Board can make such findings in this close case in the first instance. *See, e.g.*, *Chenery*, 318 U.S. at 87.

## CONCLUSION

For all of the reasons above, and those identified in the Dissent, the Court should grant rehearing, affirm the Board's decision on claims 6-7 and 9-13, and vacate and remand on the remaining claims (or, at minimum in the alternative, on all claims at issue).

January 31, 2025                    Respectfully submitted,

/s/ Timothy Devlin
Timothy Devlin
tdevlin@devlinlawfirm.com
Donald Puckett
dpuckett@devlinlawfirm.com
Andrew Peter DeMarco
ademarco@devlinlawfirm.com
Robert J. Gajarsa
rgajarsa@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010

*Counsel for Appellee*
*3G Licensing, S.A.*

ADDENDUM PURSUANT TO
FEDERAL CIRCUIT RULE 40(b)(2)(H)

# United States Court of Appeals for the Federal Circuit

———————————

**HONEYWELL INTERNATIONAL INC., TELIT CINTERION DEUTSCHLAND GMBH, FDBA THALES DIS AIS DEUTSCHLAND GMBH, SIERRA WIRELESS, ULC, FKA SIERRA WIRELESS, INC.,**
*Appellants*

**v.**

**3G LICENSING, S.A.,**
*Appellee*

———————————

2023-1354, 2023-1384, 2023-1407

———————————

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2021-00908.

———————————

Decided: January 2, 2025

———————————

ERIK HALVERSON, K&L Gates LLP, San Francisco, CA, argued for all appellants. Appellant Honeywell International Inc. also represented by BRIAN PAUL BOZZO, Pittsburgh, PA; JEFFREY R. GARGANO, Chicago, IL.

GUY YONAY, Pearl Cohen Zedek Latzer Baratz LLP, New York, NY, for appellant Telit Cinterion Deutschland GmbH. Also represented by KYLE AUTERI, I.

AMANDA TESSAR, Perkins Coie LLP, Denver, CO, for appellant Sierra Wireless, ULC.  Also represented by RODERICK O'DORISIO.

DONALD PUCKETT, Devlin Law Firm LLC, Wilmington, DE, argued for appellee.  Also represented by TIMOTHY DEVLIN, ANDREW PETER DEMARCO, ROBERT J. GAJARSA.

————————————

Before DYK, CHEN, and STOLL, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* DYK.

Dissenting opinion filed by *Circuit Judge* STOLL.

DYK, *Circuit Judge*.

Appellants Honeywell International Inc., Telit Cinterion Deutschland GmbH, and Sierra Wireless, ULC (collectively, "Honeywell") appeal the Patent Trial and Appeal Board's ("Board") final written decision in IPR2021-00908 declining to hold claims 1, 2, 4–7, 9–13, and 15–23 of U.S. Patent No. 7,319,718 (the "'718 patent") unpatentable as obvious.  *See Honeywell Int'l, Inc. v. 3G Licensing S.A.*, No. IPR2021-00908, 2022 WL 16934074 (P.T.A.B. Nov. 14, 2022).  We reverse.

BACKGROUND

I

In the field of telecommunications, computers and other electronic devices send information to one another over distance by transmitting and receiving signals.  These signals are susceptible to degradation from random errors—typically caused by interference and noise—that can result in the recipient's receiving a corrupted message.  Error protection methods reduce the incidence of such transmission errors.  One common error protection method is to encode the original message into a "codeword" and to then transmit that codeword instead of the original

message.    That way, even if errors occur during transmission, the codeword should still contain enough information from the original message that the recipient can recover the original meaning.

The '718 patent is directed to a coding method for a specific kind of information used in third-generation mobile communication systems called the Channel Quality Indicator, sometimes also referred to as channel quality information ("CQI").   The CQI is transmitted from user equipment—such as a cell phone—to a base station and indicates the quality of the cellular connection that the user equipment is receiving.    The CQI is an integer between 0 and 30, where 0 represents a very weak signal and 30 represents a very strong signal.    The CQI is represented in five bits of binary data $(a_0, a_1, a_2, a_3, a_4)$, where each bit has a value of 1 or 0, and the bits increase in significance from left to right.   For example, the integer 9 is represented by the 5-bit sequence (1, 0, 0, 1, 0), with the leftmost 1 being the least significant bit and the rightmost 0 being the most significant bit ("MSB").

The base station responds to CQI from user equipment by assigning higher data rates to user equipment reporting strong signals and lower data rates to user equipment reporting weak signals.   As the '718 patent specification explains, the main benefit of modifying data rates in response to changes in channel conditions through adaptive modulation and coding is the "higher data rate available for [user equipment] in favorable positions[,] which in turn increases the average throughput." '718 patent, col. 2, ll. 42–45.   "Throughput" refers to the data rate, or the amount of information transmitted per unit time.    Throughput is maximized when the CQI received by the base station is accurate and can suffer when the CQI is inaccurate because it is infected with transmission errors.

4       HONEYWELL INTERNATIONAL INC. v. 3G LICENSING, S.A.

## II

In an effort to create a uniform standard for third-generation mobile communication systems, the Third-generation Partnership Project ("TGPP") working group was established from a group of organizations across the globe. The TGPP was charged with developing uniform standards regarding the transmission of CQI. One challenge before the TGPP was the fact that not all transmission errors are equal—an error in the transmission of the $a_4$ bit, the MSB, results in a much greater deviation from the original CQI value transmitted by the user equipment than an error in the transmission of the $a_0$ bit, the least significant bit. Specifically, an error in $a_4$ that flips the bit from 1 to 0 or 0 to 1 causes the CQI value to change by a value of 16, whereas the same error in $a_0$ would cause a corresponding change of only 1.

Before the critical date of the '718 patent, February 13, 2002,[1] the TGPP working group was already familiar with a $(16, 5)$ Transmit Format Combination Indicator ("TFCI") encoder for encoding a 5-bit CQI signal into a 16-bit codeword.[2] The $(16, 5)$ TCFI encoder generates a 16-bit

---

[1]     The parties do not dispute that the prior art in the petition qualifies as 35 U.S.C. § 102(b) prior art under the pre-AIA Patent Act, which requires that the reference be in public use or on sale in this country more than one year prior to the date of application for patent in the United States. Because the application that resulted in the '718 patent was filed on February 13, 2003, the critical date is February 13, 2002.

[2]     An encoding method typically specifies two numbers with which the method will be associated (A, B), where A represents the number of bits of the output codeword, and B represents the number of bits of the input signal.

codeword ($b_0$, $b_1$, . . . $b_{15}$) by combining the five input bits ($a_0$, $a_1$, $a_2$, $a_3$, $a_4$) with the five basis sequences $M_{i,n}$ depicted in the basis sequence table below:

| i | $M_{i,0}$ | $M_{i,1}$ | $M_{i,2}$ | $M_{i,3}$ | $M_{i,4}$ |
|---|---|---|---|---|---|
| 0 | 1 | 0 | 0 | 0 | 1 |
| 1 | 0 | 1 | 0 | 0 | 1 |
| 2 | 1 | 1 | 0 | 0 | 1 |
| 3 | 0 | 0 | 1 | 0 | 1 |
| 4 | 1 | 0 | 1 | 0 | 1 |
| 5 | 0 | 1 | 1 | 0 | 1 |
| 6 | 1 | 1 | 1 | 0 | 1 |
| 7 | 0 | 0 | 0 | 1 | 1 |
| 8 | 1 | 0 | 0 | 1 | 1 |
| 9 | 0 | 1 | 0 | 1 | 1 |
| 10 | 1 | 1 | 0 | 1 | 1 |
| 11 | 0 | 0 | 1 | 1 | 1 |
| 12 | 1 | 0 | 1 | 1 | 1 |
| 13 | 0 | 1 | 1 | 1 | 1 |
| 14 | 1 | 1 | 1 | 1 | 1 |
| 15 | 0 | 0 | 0 | 0 | 1 |

'718 patent, col. 4, ll. 40–65 (Table 1a). To calculate each codeword bit, the following procedure is used: (1) the five CQI bits ($a_0$, $a_1$, $a_2$, $a_3$, $a_4$) are multiplied bit-by-bit with the corresponding row of the basis sequence table; (2) these five multiplication products are added together; (3) the resulting sum is divided by 2; and (4) the resulting bit is determined from the remainder value, where a remainder of 0 results in a codeword bit $b_i$ of 0 and a remainder of 1 results in a codeword bit $b_i$ of 1.[3]

By November 2001, the TGPP working group had determined that the codeword for the 5-bit CQI needed to be composed of twenty bits instead of sixteen bits. Various

---

[3]    Each codeword bit is defined by the following equation: $b_i = \sum_{n=0}^{4}\left(a_n \times M_{i,n}\right)$ mod 2 where $i = 0, 1, \ldots 15$. *See* '718 patent, col. 3, ll. 55–60.

TGPP members proposed alternatives to extend the (16, 5) TCFI encoder by four bits into a (20, 5) encoder. Because of the unequal significance of the five CQI bits, there was disagreement about what information the additional four codeword bits should contain to optimize the accuracy of the CQI. The conventional method was to protect each bit equally so as to minimize the bit error rate, which is the ratio of data bits compromised during transmission. A newer method was to provide unequal error protection for the more significant bits so as to minimize the root-mean-square error, which measures the total difference between the received value and the intended value rather than the raw number of incorrect bits.

During a TGPP meeting that began on November 19, 2001, Telefonaktiebolaget LM Ericsson ("Ericsson") proposed modifying the (16, 5) TCFI encoder by "simply taking [the] four least reliable information bits [*i.e.*, the four least significant bits] and append[ing] these to the end of the code words." J.A. 1741. Later, during a TGPP meeting that began on January 8, 2002, Koninklijke Philips N.V. ("Philips") submitted a proposal entitled "Coding of Channel Quality Information" (the "Philips reference"), which disclosed a method for extending the codeword generated by the (16, 5) TFCI encoder by four bits by appending the MSB $a_4$ (the bit that, if erroneously changed, would create the largest error in the resulting message) to the existing 16-bit codeword three times and then appending the second most significant bit $a_3$ to the modified 19-bit codeword once. *See id.* at 1423–24. To achieve this result, the Philips reference provided the following basis sequence table:

**Table 1: Basis sequences for (20,5) code as an extended (16,5) TFCI code**

| i | $M_{i,0}$ | $M_{i,1}$ | $M_{i,2}$ | $M_{i,3}$ | $M_{i,4}$ |
|---|---|---|---|---|---|
| 0 | 1 | 0 | 0 | 0 | 1 |
| 1 | 0 | 1 | 0 | 0 | 1 |
| 2 | 1 | 1 | 0 | 0 | 1 |
| 3 | 0 | 0 | 1 | 0 | 1 |
| 4 | 1 | 0 | 1 | 0 | 1 |
| 5 | 0 | 1 | 1 | 0 | 1 |
| 6 | 1 | 1 | 1 | 0 | 1 |
| 7 | 0 | 0 | 0 | 1 | 1 |
| 8 | 1 | 0 | 0 | 1 | 1 |
| 9 | 0 | 1 | 0 | 1 | 1 |
| 10 | 1 | 1 | 0 | 1 | 1 |
| 11 | 0 | 0 | 1 | 1 | 1 |
| 12 | 1 | 0 | 1 | 1 | 1 |
| 13 | 0 | 1 | 1 | 1 | 1 |
| 14 | 1 | 1 | 1 | 1 | 1 |
| 15 | 0 | 0 | 0 | 0 | 1 |
| 16 | 0 | 0 | 0 | 0 | 1 |
| 17 | 0 | 0 | 0 | 0 | 1 |
| 18 | 0 | 0 | 0 | 0 | 1 |
| 19 | 0 | 0 | 0 | 1 | 0 |

*Id.* at 1424. The rationale for the method proposed by the Philips reference was to "give significant extra protection to the MSB, and a little more robustness to the next most significant bit" by repeating the MSB three times and repeating the second most significant bit once. *Id.* at 1423. The method was thus primarily concerned with minimizing the root-mean-square error rather than focusing on the bit error rate, recognizing that unequal bit protection, which reduces the root-mean-square error, "would reduce the probability that transmission errors would result in large errors in the received channel quality value." *Id.*

On February 16, 2002, shortly after the critical date, LG Electronics, Inc. ("LGE") filed Korean Patent Application No. 10-2002-0008350, to which the '718 patent claims priority. LGE filed U.S. Patent Application No. 10/365,498 on February 13, 2003. Throughout the proceedings on appeal, the parties have treated claim 1 of

the '718 patent as representative of the challenged claims.[4]
Claim 1 recites:

_____

[4]    The dissent faults us for not separately considering
independent claim 6 and its dependent claims 7 and 9–13,
which Honeywell urged before the Board were obvious over
the Phillips reference as modified by Nokia's TGPP
proposal entitled "Channel coding and error detection for
uplink QI signaling" (the "Nokia reference").  But 3G itself
agreed that claim 1 was "exemplary," Appellee's Br. Cover
Sheet, and neither party has made any argument about
challenged claims other than claim 1.  Where parties do not
"separately argue[] the patentability of the remaining
[challenged claims,] . . . all [challenged claims] rise and fall
with" the argued claim.  *Monsanto Tech. LLC v. E.I.
DuPont de Nemours & Co.*, 878 F.3d 1336, 1339 n.1
(Fed. Cir. 2018); *see also Net MoneyIN, Inc. v. VeriSign,
Inc.*, 545 F.3d 1359, 1365 n.2 (Fed. Cir. 2008); *In re Kaslow*,
707 F.2d 1366, 1376 (Fed. Cir. 1983).

Contrary to the dissent's view, our ruling relies on the
Philips reference for a particular limitation (which was
pressed below by Honeywell), not for the entire claim as the
dissent suggests.  Dissent at 4.  As the Board found, the
Nokia reference discloses several other limitations of
claim 6, none of which 3G disputed below or on appeal.  *See*
J.A. 37–40.  The Board reasoned that Honeywell's
"argument for . . . claim 6 hinge[d] on the same arguments
[it] made for why one of ordinary skill would have been
motivated to swap the last two bits of the last row of" the
Philips reference.  J.A. 43.  Because the unpatentability
case came down to a single limitation that was the same in
substance for both claims, our review of the Board's
rejection of Honeywell's motivation-to-modify-Philips
argument thus controls the outcome for both claims 1 and

1. A method of coding channel quality information (CQI), comprising the steps of:

providing information bits, $a_0$, $a_1$, $a_2$, $a_3$, and $a_4$;

providing five basis sequences $M_{i,n}$ for a (20, 5) CQI code;

encoding the information bits by combining the information bits with the basis sequences; and

generating a 20-bit codeword, wherein the basis sequences $M_{i,n}$ are defined as:

| I | $M_{i,0}$ | $M_{i,1}$ | $M_{i,2}$ | $M_{i,3}$ | $M_{i,4}$ |
|---|---|---|---|---|---|
| 0 | 1 | 0 | 0 | 0 | 1 |
| 1 | 0 | 1 | 0 | 0 | 1 |
| 2 | 1 | 1 | 0 | 0 | 1 |
| 3 | 0 | 0 | 1 | 0 | 1 |
| 4 | 1 | 0 | 1 | 0 | 1 |
| 5 | 0 | 1 | 1 | 0 | 1 |
| 6 | 1 | 1 | 1 | 0 | 1 |
| 7 | 0 | 0 | 0 | 1 | 1 |
| 8 | 1 | 0 | 0 | 1 | 1 |
| 9 | 0 | 1 | 0 | 1 | 1 |
| 10 | 1 | 1 | 0 | 1 | 1 |
| 11 | 0 | 0 | 1 | 1 | 1 |
| 12 | 1 | 0 | 1 | 1 | 1 |
| 13 | 0 | 1 | 1 | 1 | 1 |
| 14 | 1 | 1 | 1 | 1 | 1 |
| 15 | 0 | 0 | 0 | 0 | 1 |
| 16 | 0 | 0 | 0 | 0 | 1 |
| 17 | 0 | 0 | 0 | 0 | 1 |
| 18 | 0 | 0 | 0 | 0 | 1 |
| 19 | 0 | 0 | 0 | 0 | 1. |

'718 patent, col. 12, ll. 28–58.  There is no dispute that the basis sequence table disclosed in the '718 patent is

---

6. (To be sure, the Board also determined that the Nokia reference did not disclose switching the last two digits, and Honeywell does not make any argument to the contrary.) Moreover, 3G at no point on appeal or before the Board, *see* J.A. 542–44, raised the argument now pressed upon by the dissent, so it is forfeited.

identical to the table disclosed in the Philips reference except for the last two bits in the last row, which are flipped.

On February 18, 2002, two days after filing the Korean patent application and after the critical date of the '718 patent, during a TGPP meeting, LGE proposed a modification to the Philips reference flipping the last two digits in the table, as disclosed in the Korean patent application. The LGE proposal explained that, because "there is a trade[-]off between [bit error rate] and [root-mean-square] error," the proper coding method should instead focus on optimizing system throughput. J.A. 2608. LGE proposed that the TGPP should adopt the basis sequence table that was the subject of its patent application.

During a TGPP meeting beginning on April 9, 2002, Philips supported LGE's modification, and Philips and LGE requested that the TGPP standards be changed to switch the last two digits in the basis sequence specified by the Philips reference. On July 2, 2002, LGE's proposal was approved. The '718 patent issued on January 15, 2008. On February 10, 2020, 3G Licensing S.A. ("3G") obtained ownership of the '718 patent—which effectively claimed the TGPP standard for encoding CQI—from LGE. On May 10, 2020, 3G filed a complaint for infringement of the '718 patent against Honeywell after Honeywell declined to enter into a licensing agreement for the '718 patent. 3G agrees that the challenged '718 claims are "essential to cellular standards including 3G and 4G technologies." *See* Complaint ¶ 29, *Sisvel Int'l S.A. v. Honeywell Int'l, Inc.*, 1:20-cv-00652 (D. Del. May 15, 2020).

### III

Honeywell filed a petition for inter partes review as to the challenged claims of the '718 patent with the Board, contending that claims 1, 2, 4, 5, and 15–23 are

unpatentable as obvious over the Philips reference and that claims 6, 7, and 9–13 are unpatentable as obvious over the Philips reference and the Nokia reference, urging that the challenged claims were the product of routine experimentation and optimization stemming from the Philips reference's teachings. In its final written decision, the Board acknowledged that the only difference between the Philips reference and the claim 1 was that the 1 and 0 in the last row of the basis sequences table were switched. It nonetheless declined to hold any of the challenged claims unpatentable as obvious.

The Board first found that the petition had not shown that a person of ordinary skill in the art would have been motivated to switch the last two bits of the table in the Philips reference to provide additional protection to the MSB. The Board next held that even if the petition had sufficiently made this showing, it had not demonstrated that a person of ordinary skill in the art "would have believed that such a change would be desirable," J.A. 27, explaining that the '718 patent's inventor was not motivated by a desire to increase the MSB's protection and that there was "no consensus at the relevant time that this was the preferred approach that should be the focus of the TGPP's efforts." *Id.* at 33. Honeywell filed this timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

In reviewing the Board's determinations on the question of obviousness, "[w]e review the Board's legal conclusions de novo and its factual findings for substantial evidence." *MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1293 (Fed. Cir. 2015). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375, 1381 (Fed. Cir.

2019) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

A claim is unpatentable as obvious under 35 U.S.C. § 103(a) if the differences between the claimed subject matter and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person of ordinary skill in the art. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). A determination of obviousness "requires finding that a person of ordinary skill in the art would have been motivated to combine or modify the teachings in the prior art and would have had a reasonable expectation of success in doing so." *OSI Pharms.*, 939 F.3d at 1382 (quoting *Regents of Univ. of Cal. v. Broad Inst., Inc.*, 903 F.3d 1286, 1291 (Fed. Cir. 2018)).

Honeywell contends that the Board committed legal error and that its findings are not supported by substantial evidence. We agree. Because the Board's final written decision is predicated on multiple legal errors and is unsupported by substantial evidence, we now reverse.

I

First, the Board improperly based its conclusion of non-obviousness on its finding that the '718 patent's primary motivation was to "focus[] on system throughput" rather than to minimize root-mean-square error or bit error rate. J.A. 32. It noted 3G's argument that the "'718 patent is concerned with maximizing the entire system throughput, not minimizing the [r]oot-[m]ean-[s]quare . . . error of the code, minimizing bit error rate . . . of the code, nor maximizing the protection of the [most significant bits], as disclosed by [the] Philips [reference.]" *Id.* at 18. The Board here concluded that a person of ordinary skill in the art would not have been motivated to modify the Philips reference to swap the bits to improve protection for the MSB because the '718 patent's main objective was to

maximize entire system throughput, relying on a portion of the '718 patent specification.[5] 3G's defense of the Board's decision follows the same reasoning, proclaiming that "system throughput, not [root-mean-square] error reduction, is the paradigm that led to the innovations of the '718 patent," Appellee's Br. 20, and that "protecting the MSB was not the goal or problem sought to be solved by the '718 patent," *id.* at 35.

Both the Board and 3G ignore the Supreme Court's directive in *KSR*, in which the Court recognized that "the problem motivating the patentee may be *only one of many* addressed by the patent's subject matter" and that, accordingly, "*any need or problem* known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." 550 U.S at 420 (emphases added).

Both prior to and after *KSR*, "[w]e have repeatedly held that the motivation to modify a prior art reference to arrive at the claimed invention need not be the same motivation

---

[5]    The Board reasoned:

> [S]ince the HSDPA system has been designed in order to increase the system throughput," the '718 patent explains, "it is desirable to use the system throughput as one of the criteria in order to select [an] optimum CQI coding scheme." . . . Thus, the invention of the '718 patent seeks to "provide a method for generating basis sequences for CQI coding capable of maximizing a system throughput.

J.A. 6 (alterations in original) (first quoting '718 patent, col. 6, ll. 50–53, then quoting *id.* at col. 7, ll. 59–61).

14      HONEYWELL INTERNATIONAL INC. v. 3G LICENSING, S.A.

that the patentee had." *Alcon Rsch., Ltd. v. Apotex Inc.*, 687 F.3d 1362, 1368 (Fed. Cir. 2012) (citing *KSR*, 550 U.S. at 420; *In re Kahn*, 441 F.3d 977, 990 (Fed. Cir. 2006); *DyStar Textilfarben GmbH v. C.H. Patrick Co.*, 464 F.3d 1356, 1361 (Fed. Cir. 2006)). Requiring the motivation to modify to be the same motivation as that of the patent inventor has no basis in obviousness doctrine. *KSR* directs precisely the opposite, explaining that "[i]n determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls." 550 U.S. at 419. The fact that the inventor of the '718 patent may have had a different or even novel motivation that led them to swap the last two digits of the Philips reference is irrelevant.

## II

Second, the Board's finding that the IPR petitioners "ha[d] not sufficiently shown that [a person of ordinary skill in the art] would have been motivated to swap the last two bits in the last row of the [Philips reference] in order to provide more protection to the [MSB]," J.A. 26–27, is not supported by substantial evidence. The uncontroverted evidence in the record demonstrates that the Philips reference teaches protecting the MSB through redundancy and that a person of ordinary skill in the art would understand that flipping the two digits in the last row of the basis sequence table would repeat the MSB and hence increase its protection.

On its face, the Philips reference teaches that it is preferable for "the most significant bits of the data [to be] better protected than the least significant bits." J.A. 1423. In the Phillips reference, $a_4$ is the MSB and $a_3$ is the second most significant bit, and the reference states that extending the basis sequences as disclosed "gives significant extra protection to the MSB, and a little more robustness to the next most significant bit." *Id.* The

Board's finding that the petition failed to show that a person of ordinary skill in the art would not understand how protecting the MSB was taught by the Philips reference is not supported by substantial evidence. In making this factual finding, the Board ignored the unrebutted statement by Honeywell's expert Dr. Clark in the petition that a person having ordinary skill in the art would have understood that the scheme proposed in the Philips reference "would have the purpose and effect of providing extra protection to the MSB" and that "providing extra protection to the MSB would be a desirable goal." *Id.* at 978.

Although 3G's expert Dr. Smith testified at length about disagreement among TGPP members about which parameters should be prioritized, at no point did he attempt to rebut Dr. Clark's opinion that a person of ordinary skill in the art would understand that swapping the two digits in the basis sequence would repeat the MSB an additional time and provide increased protection to the MSB. *See* J.A. 2047–49. Dr. Smith did not dispute that swapping the last-row digits would increase protection to the MSB and instead simply disputed whether it was understood that doing so would have been desirable. There is accordingly no evidence in the record from which a reasonable mind could conclude that the petition failed to show that a person of ordinary skill in the art would not understand that the modification of the Philips reference would have increased protection for the MSB, a goal that the Philips reference itself recognized.[6]

-------------------

[6] The Board relied on Dr. Smith's testimony that "[a]dding all protection to just the MSB removes protection for all other bits," J.A. 27 (alteration in original) (emphases removed) (quoting *id.* at 2538 ¶ 16), in concluding that

Contrary to the dissent's charge that we have taken "the extraordinary step of fact finding," Dissent at 1, we hold only that the Board's conclusion is not supported by substantial evidence.

## III

Third, the Board's decision appears to be based in part on a conflation between the relevant standards for obviousness and anticipation. In its final written decision, the Board acknowledged the Philips reference's "recognition that it is beneficial to 'give significant extra protection to the MSB,'" but found it significant that the Philips reference "did not propose doing so by swapping the last two bits of the last row." J.A. 33.

---

Honeywell had "not sufficiently shown that one of ordinary skill would have believed that such a change would be desirable." *Id.* But on its face, this statement conflicts with the plain language of the Philips reference and claimed modification. The claimed modification transfers only the "little more robustness" from the next most significant bit to the MSB, *id.* at 12 (quoting *id.* at 1423), not "remov[ing] protection for all other bits," *id.* at 27 (emphases removed) (quoting *id.* at 2538 ¶ 16).

The dissent faults us for "discredit[ing]," Dissent at 2, Dr. Smith's testimony; however, we are not required to uncritically accept expert testimony that is flatly contradicted by the record. *See Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1378 (Fed. Cir. 2017) ("[W]e must disregard the testimony of an expert that is plainly inconsistent with the record."). In any event, our cases have consistently held that conclusory expert testimony does not qualify as substantial evidence. *See TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1358 (Fed. Cir. 2019).

If the Philips reference did in fact "propose . . . swapping the last two bits of the last row," J.A. 33, the Philips reference would anticipate the '718 patent, and the inquiry before the Board would be at an end. *See Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1543 (Fed. Cir. 1983) ("[T]he need to determine obviousness presumes anticipation is lacking."). In according *any* weight to the mere fact that there is a difference in the basis sequence tables in the Philips reference and '718 patent, the Board committed legal error by "deviat[ing] impermissibly from the invalidity theory set forth in [the] petition." *M & K Holdings, Inc. v. Samsung Elecs. Co., Ltd.*, 985 F.3d 1376, 1385 (Fed. Cir. 2021).

## IV

Fourth, the Board erred in finding that there was an insufficient motivation to switch the last two bits in the Philips reference because of uncertainty as to "what CQI coding scheme would be best," J.A. 28, or the "preferred" approach, *id.* at 33, for the working group to adopt as the standard for coding CQI. In particular, the Board's analysis stressed that Honeywell failed to show consensus among the working group members during the relevant time period that a scheme of unequal error protection favoring the MSB was the preferred approach. But Honeywell was not required to make this showing.

We have long recognized that obviousness "does not require that a particular combination must be the preferred, or the most desirable, combination described in the prior art in order to provide motivation for the current invention." *Novartis Pharms. Corp. v. West-Ward Pharms. Int'l Ltd.*, 923 F.3d 1051, 1059 (Fed. Cir. 2019) (quoting *In re Fulton*, 391 F.3d 1195, 1200 (Fed. Cir. 2004)); *see also PAR Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1197–98 (Fed. Cir. 2014) (explaining that our case law "does not require that the motivation be the *best* option").

Rather, "the question is whether there is something in the prior art as a whole to suggest the desirability, and thus the obviousness," of the claimed invention. *In re Beattie*, 974 F.2d 1309, 1311 (Fed. Cir. 1992) (quoting *Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1462 (Fed. Cir. 1984)).

By failing to recognize that the claimed modification needed only to be desirable in light of the prior art and not the "best" or "preferred" approach, the Board committed legal error. Here, the Philips reference's disclosed goal of "giv[ing] significant extra protection to the MSB," J.A. 1423, provided the motivation for the claimed modification.

## CONCLUSION

For the foregoing reasons, the decision of the Board is reversed.

**REVERSED**

# United States Court of Appeals
# for the Federal Circuit

---

**HONEYWELL INTERNATIONAL INC., TELIT CINTERION DEUTSCHLAND GMBH, FDBA THALES DIS AIS DEUTSCHLAND GMBH, SIERRA WIRELESS, ULC, FKA SIERRA WIRELESS, INC.,**
*Appellants*

**v.**

**3G LICENSING, S.A.,**
*Appellee*

---

2023-1354, 2023-1384, 2023-1407

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2021-00908.

---

STOLL, *Circuit Judge*, dissenting.

I agree with the majority's determination in Part III that the Board erred by giving weight to the fact that the Philips reference did not propose swapping the last two bits of the last row of its basis sequence table. In so doing, the Board erroneously conflated obviousness with anticipation. This conclusion should result in our vacating the Board's decision for the Board to reevaluate obviousness of claims 1–2, 4–5, and 15–23 under the proper legal framework. Instead, the majority takes the extraordinary step of fact finding, a role not appropriate at the appellate

stage, making arguments for the parties that they did not make and then deciding those arguments. Respectfully, this is not our role. This case should be vacated for the Board to review the evidence and make fact findings, we should not be reversing. I respectfully dissent from the majority's departure from our role as an appellate court.

This case presents a close factual dispute of whether Honeywell proved by preponderant evidence that a skilled artisan would have been motivated to swap the last two bits in Philips' basis sequence table without making other changes to the table. This case is unique in that the Board relied heavily on the history of the 3GPP proceedings, including evidence regarding the contemporaneous development of the several different prior art CQI coding schemes (including the Philips scheme) and the claimed CQI coding scheme, as well as a critique of the claimed CQI coding scheme relative to the prior art coding schemes. The Board relied on that evidence to understand the knowledge of a person of ordinary skill in the art at the time of the invention and how such a person would have viewed the proposed modification to the prior art. Careful consideration of such objective evidence can be extremely important in a non-obviousness analysis because it "serve[s] to 'guard against slipping into use of hindsight,'" *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 36 (1966) (citation omitted).

Were I the fact finder, perhaps I would have found differently than the Board when considering whether a person of ordinary skill in the art would have been motivated to modify the Philip's basis sequence table to flip the last two numbers in the table without making any responsive changes to other parts of the table. But I am not the fact finder. Nor is the majority, although the majority does appear to reweigh unchallenged evidence on appeal. For example, at Footnote 6 of its opinion, the majority discredits expert testimony from Dr. Smith, 3G's expert, as allegedly conclusory and contradicted by the

Philips reference notwithstanding that the Board found this very testimony credible and Honeywell did not challenge it on appeal (even when asked about it at oral argument). Specifically, Dr. Smith testified about why one of ordinary skill in the art would have considered switching the last two bits in Philips' table to arrive at the claimed invention undesirable—i.e., because "[a]dding all protection to just the MSB removes protection for all other bits," Majority Op. at 15–16 n.6 (alteration in original) (quoting J.A. 27). By switching the last two bits of the Philips' table, protection is removed from the second most significant bit and more protection is provided to the most significant bit. To be sure, Dr. Smith's testimony more aptly relates to protection for the second most significant bit. But Dr. Smith's testimony is supported by—not contradicted by—the Philips reference. In particular, Philips' recognition that "giv[ing] significant extra protection to the MSB, and a little more robustness to the next most significant bit," J.A. 1423, is consistent with Dr. Smith's concern that switching the last two bits removes protection from the next most significant bit. What a prior art reference teaches is a question of fact. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 839 F.3d 1034, 1051 (Fed. Cir. 2016). The majority is not the Board, whose role it is to make fact findings about what a person of ordinary skill in art would understand a prior art reference to teach in this case. I would thus vacate the Board's decision and remand for further proceedings consistent with the majority's reasoning in Part III as to Ground 1 of Honeywell's Petition challenging claims 1–2, 4–5, and 15–23 of the '718 patent.

Additionally, a complete reversal of the Board's decision is inappropriate for a separate reason. Honeywell's Petition for IPR relied on two separate grounds: (1) "Ground 1: Claims 1, 2, 4, 5, and 15–23 are Unpatentable Under 35 U.S.C. § 103(a) as Obvious Over *Philips*[]," a single-reference obviousness challenge, which

is discussed above; and (2) "Ground 2: Claims 6, 7, and 9–13 are Unpatentable Under 35 U.S.C. § 103(a) as Obvious Over *Philips*[] and *Nokia*," a two-reference combination obviousness challenge based on the Philips reference and the Nokia reference. J.A. 141. With regards to Ground 2, the Board reached three conclusions to hold that Honeywell had not proven by preponderant evidence that claim 6 and its dependents were obvious over the Philips reference and the Nokia reference: (1) "Petitioner has failed to prove by a preponderance of the evidence that one of ordinary skill would have been motivated to modify Philips[]," for the reasons discussed for Ground 1; (2) "Nokia does not disclose repeating one of the information bits four times, as claim 6 requires, but rather discloses that each codeword is 'extended with the four least reliable information bits'"; and (3) "Petitioner has not sufficiently shown that one of ordinary skill [in the art] would have found it obvious to alter Nokia's method of repeating the four least reliable bits in order to achieve the '718 patent's method of repeating a single information bit four times," as claim 6 requires. J.A. 43 (citation omitted).

Honeywell's Petition does not contend that claim 6 and its dependents would have been obvious over the Philips reference alone, and it makes no argument on appeal about the Nokia reference. The Supreme Court in *SAS Institute, Inc. v. Iancu*, made clear that IPRs are limited to the grounds raised in the petition. 584 U.S. 357, 363–68 (2018). Neither the Board nor this court can alter the grounds presented for claim 6 and its dependents. And Honeywell forfeited any argument regarding the Board's fact findings on the scope and content of the Nokia reference. *See, e.g.*, *Astellas Pharma, Inc. v. Sandoz Inc.*, 117 F.4th 1371, 1379 n.4 (Fed. Cir. 2024). Even with the majority's new reading of Philips above, it is for the Board to determine, in the first instance, whether a skilled artisan at the time of the invention would have been motivated to combine Philips and Nokia in the manner

proposed in the petition.[1]  Thus, I would, at minimum, vacate and remand for further proceedings as to the non-obviousness of claims 6–7 and 9–13.

The majority's view that we can reverse the Board's unchallenged fact findings with respect to claims 6–7 and 9–13 because Appellee/Patent Owner 3G identified claim 1 as an exemplary claim on the inside cover of its appeal brief finds no support in law.  *See* Majority Op. at 8–9 n.4.  As the Supreme Court has made clear, the petitioner sets the stage for the issues in an IPR and the appellant identifies the issues on appeal.  The dissent's holding that 3G waived the Board's findings in its favor on claims 6–7 and 9–13 (two of which were not even challenged by Honeywell on appeal) simply because it included claim 1 as an exemplary claim on the inside cover of its principal brief as required by Federal Circuit Rule 32(a)(3) ignores these principles and cannot stand.

While it might seem more expeditious to reverse—replacing the Board's fact finding with our own—this is not our role.  Accordingly, I dissent.

---

[1]     At oral argument, we asked Honeywell's counsel to clarify whether Honeywell was abandoning its challenge to claims 6–7 and 9–13.  Counsel asserted that Honeywell was not and, in fact, contended that whether *remand* was appropriate for those claims would rise and fall with this court's decision regarding the Philips reference.  *See* Oral Arg. at 5:27–7:01, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-1354_10082024.mp3.  This concession from Honeywell illustrates that not even the Appellant requests a full reversal of the Board's decision.

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing petition complies with the relevant type-volume limitations of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it has been prepared in a proportionally spaced typeface in 14-point font and includes 2,965 words, excluding the parts exempted under those Rules.


*/s/ Timothy Devlin*
Timothy Devlin
tdevlin@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010

*Counsel for Appellee*
*3G Licensing, S.A.*